## HALL v. HARRIS.

### Opinion delivered October 14, 1918.

1. SPECIFIC PERFORMANCE—PAROL CONTRACT—SUFFICIENCY OF EVIDENCE.—Equity will not decree specific performance of a parol contract for the conveyance of land unless the terms of the contract are clearly and conclusively proved.

2. SPECIFIC PERFORMANCE—SUFFICIENCY OF EVIDENCE.—Evidence *held* insufficient to entitle plaintiff to specific performance of a parol contract for conveyance of land.

Appeal from Van Buren Chancery Court; *B. F. McMahan*, Chancellor; affirmed.

The appellants *pro sese*.

1. Appellee purchased from Henley, subject to and with notice of appellant's claim. Open, notorious, unequivocal and exclusive possession under claim of ownership for the statutory period, gives title. 47 Ark. 533; 54 *Id.* 273. The legal title can not overrule the equities of the occupants. 13 L. R. A. (N. S.) 54. A subsequént purchaser gets no better title than his grantor had. *Ib.* Appellee was chargeable with all the information a diligent inquiry would have disclosed. 33 Ark. 465; 41 *Id.* 173.

2. When a donee enters into possession and makes valuable improvements on the faith of a gift it constitutes a consideration for specific performance. 82 Ark. 33. This cause falls clearly within the rule in 82 Ark. 33.

*Garner Fraser,* for appellee.

1. The decree is supported by the clear preponderance of the testimony. 81 Ark. 68; 1 Crawford's Dig., p. 309, citing 57 cases.

2. Appellee has the paper title. Appellant's improvements were not sufficient to take the parol gift out of the statute. Appellants have shown no equities.

WOOD, J. Riley Williams owned a tract of land in Van Buren County. He had three daughters, Betty Williams, Nice Nenley, and Lou Hall. They were all of age. Williams was 76 years of age in 1915 and in feeble health. He concluded to divide his farm among his children. He called in three of his neighbors and requested them to lay off the land into three tracts. His desire was to have them made as near equal in value as possible. They were designated as the upper, middle and lower tracts. He first concluded to give the upper tract to Mrs. Henley, the middle to Betty Williams, and the lower to Lou Hall. This was in the fall of 1915, but at that time he executed no deeds. In the spring of 1916 he changed his mind and executed and delivered a deed to his daughter, Lou Hall, to the upper tract, and to Betty Williams the middle, and to Nice Henley the lower.

On December 20, 1916, Nice Henley deeded the lower tract to W. D. Harris. On the 17th of February, 1917, Riley Williams executed to his daughter, Nice Henley, a second deed to the lower tract, which deed recited that it was made to correct an error in the description in his first deed to her, and on the same day Nice Henley executed another deed to appellee, Harris, reciting that it was made for the purpose of correcting the error in the description in her deed to Harris of December 20, 1916. Harris paid $425 in cash and gave his notes for $425 as the consideration for the deed.

Robert Hall, who married Lou Williams in February, 1916, took possession of the lower tract. Harris, claiming to be the owner of this tract under his deed from Nice Henley, demanded of Hall the possession of the land

which Hall refused to surrender. Whereupon Harris instituted an action for possession of the land and for damages against Bob and Lou Hall. The appellees answered, alleging that Riley Williams had given to them the tract in controversy in consideration of an indebtedness due from Williams to them in the sum of $250, and that he had placed them in possession of the land promising to execute a deed to them for same; that they had made valuable improvements in the sum of $35 and had paid all the taxes on the land. They made their answer a cross bill, and prayed that the deeds from Nice Henley to Harris be cancelled as a cloud on their title, and that the cause might be transferred to equity to give them such relief. The cause was, accordingly, transferred to the chancery court. At the hearing the court found that Harris had title to the land, and was entitled to the immediate possession and to the rents for same for the year 1917, in the sum of $126. From the decree dismissing appellants' complaint for want of equity and quieting the title in appellee, and awarding appellee damages in the sum of $126, is this appeal.

The appellee testified that he purchased the land from Nice Henley, and introduced his deeds. He received his last deed in February, 1917, and demanded possession of the land from Hall which Hall refused to surrender.

Riley Williams testified that he had owned a farm in Van Buren county for 25 or 30 years. He gave his daughter, Nice Henley, the particular tract described in her deed because he wanted her to have it and deeded to the other children the parts he wanted them to have. At the time the children received their deeds they thanked him and said they were satisfied. R. W. Hall told the witness in the spring of 1916 that he had already started his crop, but that if witness would let him cultivate the lower end, he would turn the land back after the crops were gathered in just as good shape as when he got it. That was the agreement under which Hall cultivated the lower end of the field in 1916. Witness did not owe Hall or his wife anything and never did owe either of them. For 25 years

witness had furnished them land to cultivate, about 17
acres, and they did not pay any rent for it. He paid a lit-
tle scrip on witness' taxes, but in all it amounted to prac-
tically nothing. Witness suspected from Hall's actions
and talk that he had in mind to try to get the whole farm,
and witness wanted to fix it while he was living so each of
his daughters would get an equal part. Witness stated
that, on one occasion when he came to Little Rock to have
an operation performed, Hall accompanied him. Witness
was to pay all expenses. Witness paid Hall $25 in cash
and later paid the balance of the expense of the trip to
Hall in corn and hay. Witness did not owe Hall for any
services, nor for any money loaned or advanced by Hall
to witness. Hall commenced farming the lower end in
the spring of 1916. He went into possession under a ver-
bal agreement. At the time of the rental agreement Hall
knew that witness had deeded the land to his three daugh-
ters, and knew what part each was to get. The mistake
in witness' deed of April 4, 1916, to his daughter, Nice
Henley, was an error of the notary.

The testimony of Nice Henley tended to corroborate
the testimony of her father as to his intention in the di-
vision of the farm among his three daughters. She stated
that he intended that his daughters should each get one-
third of his land, divided according to its value, and he
deeded the land in controversy to her, and to the others
their respective tracts, to carry out his intention. The
testimony of the three men who were selected by Williams
to divide his land tended to show that Williams requested
them to divide his land into three parts as near equal as
possible according to value.

Appellant, Lou Hall, testified that her father gave
her the lower tract, the land in controversy; her sister,
Betty, the middle part, and Nice the upper part; that he
put her in possession of her part and told her that he
would give her a deed to it in time, and for her husband
to have it assessed in her name. He said he was going to
divide it equally; that he was due Bob and was going to
pay him until he was satisfied; that the indebtedness was

Bob's paying off a note to one Mr. Roberts for him and for his paying his way to Little Rock. He promised to make witness a deed to the lower end, but instead made it for the upper end. On cross-examination she stated that when she received the deed, her father told her it was for the upper end. She asked him why he had changed his mind, and he replied that the Nice boys were not satisfied. He told witness he hoped she would be satisfied. Witness replied that she "just as well be for all the good it would do;" that she could not help what he did and she was glad to get any part. Her husband cleared the land known as the upper end; he never paid any rent; just kept the taxes paid on it. For 27 years he got the use of the upper end for the improvements he made on it.

Appellant, R. W. Hall, testified that he and his wife were in possession of the land in controversy, and had been since February, 1916. Riley Williams and his three daughters had a family meeting, and at that meeting he turned this tract over to witness' wife. The next day he said he was owing witness some, and, if it was satisfactory, witness could take that part (the lower tract) and strike off even. Witness told Williams of the $100 he had paid to one Roberts for Williams and also of $50 or $55 borrowed money. Witness told Williams that he would rather have the lower end by $200 than either of the other tracts, and witness and Williams agreed to strike off even. Witness then cancelled Williams' indebtedness as a consideration for his giving witness' wife the lower tract and took possession of the lower by reason of such division. Witness testified that he had some evidences of Williams' indebtedness to him and introduced what purported to be a receipt as follows:

"Scotland, February 21, 1888. Received of Robert Hall, $100 due him by Riley Williams. (Signed) C. C. Roberts."

Witness also introduced receipts showing payments of the expenses of Williams and witness on their trip to Little Rock. Witness denied receiving any cash from Williams on the trip. On cross-examination he stated

that he had been working the upper tract about 28 years, but never did pay any rent. He was to have a lease from Williams as long as he and Williams lived, for clearing and fencing it. The lease was oral, and witness paid $2.50 a year on the taxes. Witness improved the lower tract after he went into possession, by removing all the timber blown down on it by the cyclone, and by clearing a strip around the slough, and rebuilding the fence. The total value of the improvements amounted to $25 or $30. There were 21 acres in cultivation on the lower tract of the fair rental value of $6 per acre.

A decided preponderance of the evidence tended to prove that the rental for the year 1917 exceeded the sum awarded by the court in its decree in favor of the appellee. We have set forth in substance the testimony relied upon by the parties tending to sustain their respective contentions, and we are convinced that the preponderance of the evidence shows that the appellee had title to the property as alleged in his complaint, and that his damages by reason of the appellant's detention of the same amounted to at least the sum adjudged to appellee in the decree of the trial court.

The issues as to whether the appellee made an oral gift of the land in controversy to appellant, Lou Hall, and whether or not appellants, in pursuance of such, took possession and made substantial and valuable improvements thereon, are purely issues of fact. The law applicable to such cases where specific performance is prayed is declared by this court in *Young v. Crawford*, 82 Ark. 33, where we held: "Equity will not decree specific performance of a parol contract for the conveyance of land, unless the terms of the contract are clearly and conclusively proved."

The burden was upon the appellants upon their cross-complaint, and their proof is not sufficient to entitle them to the relief prayed. The decree is in all things correct and is, therefore, affirmed.